# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| DEBY JOE SARGENT aka<br>DEBORAH JOE SARGENT,<br><br>**Debtor.** | **Bankruptcy Case<br>No. 04-41308** |

---

| | |
|---|---|
| R. SAM HOPKINS, TRUSTEE,<br><br>**Plaintiff,**<br><br>**vs.**<br><br>JAY S. WATERS, JR.,<br><br>**Defendant.** | **Adv. Proceeding No. 04-6249** |

---

# MEMORANDUM OF DECISION

---

**Appearances:**

      James A. Spinner, SERVICE, SPINNER & GRAY, Pocatello, Idaho, Attorney for Plaintiff.

      Jay Waters, Albion, Idaho, *Pro Se,* Defendant.

MEMORANDUM OF DECISION - 1

Chapter 7 Trustee R. Sam Hopkins ("Plaintiff") seeks to recover a $5,000 payment made by Debtor Deby Sargent to Defendant Jay Waters as a preference. Before trial, the Court granted Plaintiff's motion for summary judgment in part, concluding that Plaintiff had established as a matter of undisputed fact and law that the payment at issue satisfied the elements of a preference in 11 U.S.C. § 547(b)(1), (2), (4), and (5) of the Bankruptcy Code. Docket Nos. 14, 15. However, the Court directed that a trial be held concerning the issue of whether Debtor was insolvent at the time of the payment, *see* 11 U.S.C. § 547(b)(3), and regarding any defenses asserted by Defendant. That trial was conducted on May 20, 2005, and this Memorandum of Decision represents the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052.[1]

## **FACTS**[2]

In May 2003, Defendant loaned Debtor, his sister, $6,800. Ex. A. Defendant had borrowed this money from Key Bank, his employer at the time. In

---

[1] The Court discussed most of the relevant facts, which were undisputed, in its disposition of Plaintiff's motion for summary judgment. Docket No. 15. Those facts need not be repeated here. Instead, only the facts relied upon to resolve the issue of Debtor's solvency and Defendant's defenses are set forth below.

[2] In some instances, the evidence and testimony presented was conflicting. In resolving the factual disputes and making its findings of fact, the Court has relied in part upon its opportunity to observe the witnesses testify and to assess their demeanor and credibility. The Court has assigned appropriate weight to that testimony in this decision.

MEMORANDUM OF DECISION - 2

February 2004, Debtor repaid $5,000 to Defendant by depositing the money into one of Defendant's bank accounts. He then made a similar payment to Key Bank to repay a portion of his loan.

Debtor filed for Chapter 7 bankruptcy relief on June 17, 2004. In Debtor's schedules of her liabilities, as amended, she disclosed that she had incurred $8,207 in unsecured debt prior to February 2004. Exs. 1, 2. Additionally, Debtor testified at trial that she owed, but did not list on her schedules, approximately $4,000 to Defendant and $8,030 to the J.R. Simplot Co. based on a default judgment, Ex. 7. Both of these debts were also incurred prior to February 2004, when she made the allegedly preferential transfer to Defendant.

Debtor also testified that when the state court entered her divorce decree on June 1, 2004, Ex. 11, she owed several thousand dollars in legal fees to her divorce attorney. She did not specify what portion of this debt she had incurred prior to February 2004.

Debtor owned a house encumbered by a deed of trust. Debtor testified, without contradiction, that she owed between $67,000 and $68,000 on this mortgage as of February 2004. The trustee's deed from a subsequent foreclosure sale, Ex. 9, tends to support Debtor's testimony on this point. In

MEMORANDUM OF DECISION - 3

addition to the principal owed, Debtor was four months is arrears on her $780 monthly payment obligation at that time. Ex. 8.

As for assets, in February 2004, Debtor owned the house just mentioned. Plaintiff and Defendant offered conflicting evidence of the house's value. Plaintiff's evidence places the value at approximately $79,000. *See* Ex. 9 (foreclosure trustee's deed indicating a sale price of $77,800 on April 8, 2004); Ex. 10 (Bonneville County tax assessment for $79,500, dated May 9, 2005). Defendant's evidence indicates a $90,000 value. Considering all the evidence, the Court is persuaded by Plaintiff's evidence and finds the value of the house was, more probably than not, $79,000 as of February 2004.

Debtor's Schedule B, as amended, shows that she owned a modest amount of personal property with an aggregate value of $8,863. Ex. 3. She claimed as exempt all of this property, with the exception of $1,275 from her expected 2004 tax refunds. Ex. 4. Debtor claimed no exemption in her house.[3] *Id*.

### DISCUSSION

**A. Was Debtor insolvent at the time of the transfer?**

---

[3] In her Schedule A, Debtor listed the value of her house at $90,000 and the amount of the claim secured by the house at $90,000.

MEMORANDUM OF DECISION - 4

For a Chapter 7 trustee to recover a preferential transfer by a debtor to a creditor under 11 U.S.C. § 547(b), the debtor must have been insolvent at the time of the transfer.[4]  Under the Bankruptcy Code, for an individual debtor, "insolvent" is defined as a

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>   (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>   (ii) property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. § 101(32)(A).  The calculation required by this section excludes any property that may be exempted by the debtor under § 522.  This provision allows the states to opt out of the federal exemptions and limit debtors to state exemptions.  11 U.S.C. § 522(b).  Idaho has opted out of the federal exemptions, Idaho Code § 11-609; *Magic Valley Collections & Recovery, Inc. v. Salinas* (*In re Salinas*), 04.3 I.B.C.R. 110, 111 (Bankr. D. Idaho 2004), and under Idaho law, debtors may claim a homestead exemption of up to $50,000, Idaho Code § 55-1001–1011; *Salinas*, 04.3 I.B.C.R. at 111.

---

[4] Plaintiff bears the burden of proof on all the elements of § 547(b). *Murphy v. McNelis* (*In re Tytan Motors, Inc.*), 02.4 I.B.C.R. 171, 173 (Bankr. D. Idaho 2002).  As mentioned in the introductory paragraph, Plaintiff established the other statutory elements of a preference through his motion for summary judgment.

MEMORANDUM OF DECISION - 5

The record establishes that, at the time of Debtor's $5,000 transfer to Defendant, Debtor had liabilities of at least $20,237 ($8,207 listed on her Schedule F and Am. Schedule F + $4,000 owed to Defendant and not scheduled + $8,030 owed under the default judgment = $20,237).

Debtor's nonexempt assets are somewhat more difficult to quantify. Regarding her personal property, from her amended Schedule B and amended Schedule C, Ex. 3, Debtor had only $1,275 in nonexempt personal property (a portion of her tax refund) on the date of filing. The responses contained in Debtor's statement of financial affairs, Ex. 5, which Debtor signed under penalty of perjury and which may be considered as an evidentiary admission, *see, e.g., In re Webb*, 03.1 I.B.C.R. 25, 26 (Bankr. D. Idaho 2002), indicate she did not transfer any of her assets during the one year preceding her bankruptcy filing. Thus, the Court can infer Debtor had no other assets, except for those listed in her schedules, that would affect the § 101(32)(A) insolvency calculation. Assuming Debtor owned all the personal property listed in her schedules in February 2004, the value of her nonexempt personal property at the time she made the payment to Defendant would not exceed $6,275 ($1,275 listed in her schedules[5] + $5,000 transferred to Defendant). *See* 5 *Collier on Bankruptcy* ¶ 547.03[5] (Alan N.

---

[5] This calculation is likely too generous, since it assumes Debtor had a right to the full tax refund in February, long before the conclusion of the tax year.

MEMORANDUM OF DECISION - 6

Case 04-06249-JDP   Doc 20   Filed 06/30/05   Entered 06/30/05 13:50:24   Desc Main
                    Document      Page 7 of 12

Resnick & Henry J. Sommer eds., 15th ed. rev. 2002) (explaining the amount of the preferential transfer is considered an asset for calculating insolvency).

Regarding her real property, Debtor had precious little equity in her house in February 2004. As noted, the house was worth $79,000, and Plaintiff proved that Debtor owed at least $70,120 on the mortgage at that time ($67,000 + four delinquent monthly payments of $780 = $70,120). In truth, Debtor likely owed more than this amount, considering likely penalties and accrued interest, which could explain why neither party showed that there were any excess foreclosure sale proceeds returned to Debtor. At any rate, the record shows that Debtor could not have had more than approximately $9,000 in equity, all of which would be exempt under Idaho law.[6] Idaho Code § 55-1003.

In summary, then, in February 2004, when Debtor paid Defendant $5,000, Debtor's liabilities were at least $20,237 and her nonexempt assets did not exceed $6,275. Debtor was therefore insolvent for purposes of § 547(b)(3) of the Bankruptcy Code.

**B. Did Defendant establish any defenses?**

---

[6] Even if the Court accepted Defendant's assertion that Debtor's house was worth $90,000 in February 2004, all of the equity would still be exempt. Idaho Code § 55-1003 (permitting an exemption in up to $50,000 in equity). Therefore, the Court's analysis would not be any different.

MEMORANDUM OF DECISION - 7

The defenses asserted by Defendant have been liberally construed by the Court. At bottom, though, Defendant contends that Plaintiff should not be able to recover the $5,000 Debtor paid him because he used the money to partially repay his loan to Key Bank, his source of the funds loaned to Debtor. Unfortunately, this argument does not satisfy the requirements of any of the statutory defenses to preference recovery found in § 547(c). Moreover, it does not fit within the earmarking defense or the conduit defense mentioned in the Court's disposition of Plaintiff's prior motion for summary judgment. Mem. of Decision at 12–13, Docket No. 15.

"[The] earmarking doctrine applies when a third party lends money to a debtor for the specific purpose of paying a selected creditor." *Adams v. Anderson* (*In re Superior Stamp & Coin, Co.*), 223 F.3d 1004, 1008 (9th Cir. 2000). The justification for this defense to a preference action is that the substance of the transaction has no effect on the assets available to creditors; one creditor is simply replaced with another. *Id*. But the transaction in this case between Defendant and Debtor is clearly different. Defendant admitted that Debtor was not liable on his Key Bank loan; therefore, there was no substitution of creditors. Moreover, Debtor's payment of $5,000 to Defendant did diminish the assets she had available to pay other creditors.

MEMORANDUM OF DECISION - 8

The conduit defense to liability under 11 U.S.C. § 550 for receipt of a preference is also inapplicable.[7] In *Post-Confirmation Comm. of Unsecured Creditors of Incomnet Communication Corp. v. Universal Serv. Admin. Co.* (*In re Incomnet, Inc.*), 299 B.R. 574, 578–80 (B.A.P. 9th Cir. 2003), the Panel explained that the equitable "conduit" defense to liability under § 550 is only applicable to two-step transactions: "where A transfers property to B as an agent for C." Under such circumstances, the intermediary is a mere conduit that delivers property from the debtor to the initial transferee. Under those limited facts, the intermediary, often times a financial institution, is not responsible for returning the preferential transfer.

But in this matter, Defendant was the initial transferee. Debtor owed Defendant money and she deposited a $5,000 payment to him in his bank account. Defendant was free to use those funds as he wished. That he used the funds to

---

[7] Section 550 of the Bankruptcy Code states in relevant part:

> [T]o the extent that a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>   (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

MEMORANDUM OF DECISION - 9

repay his loan at Key Bank may have been prudent, but it does not change the preference analysis. The conduit defense does not protect Defendant.

Defendant's argument also falls short of a limitation on a trustee's ability to recover preferential transfers that Congress recently added to the Bankruptcy Code. Under new 11 U.S.C. § 547(i):

> If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider for the benefit of a creditor that is an insider, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.[8]

This new provision appears to be directed at terminating the application of the so-called *Deprizio* rule, first expressed in *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir. 1989). In *Levit*, the Seventh Circuit held that a trustee could recover a preferential payment made to a creditor that was not an insider even if the payment was made between one year and ninety days prior to the debtor's filing, if the payment created a benefit for an insider, such as when the

---

[8] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1213, 119 Stat. 23, 194–95 (2005). While the bulk of this Act is not effective until 180 days after its enactment, *id*. at § 1501, 119 Stat. at 216, which occurred on April 20, 2005, the language in § 547(i) is applicable to all cases pending or filed after the enactment date. *Id*. at § 1213, 119 Stat. 194–195. Therefore, this new Code provision is applicable to this adversary proceeding because the proceeding and Debtor's bankruptcy case were pending on April 20.

MEMORANDUM OF DECISION - 10

insider guaranteed the obligation owed to the creditor receiving the payment. *Id*. at 1194–1201.  Regardless of the congressional motive for enacting new § 547(i), this provision simply does not protect Defendant.  Defendant received the $5,000 directly; it was not sent to another of Debtor's creditors.  Defendant admitted in his testimony that only he, and not Debtor, was liable for the Key Bank loan.  As a result, § 547(i) does Defendant no good.

Defendant has not established any defense to Plaintiff's action.

## CONCLUSION

Both Debtor and Defendant have expressed their belief that, in this case, they did nothing "wrong."  Even so, § 547(b) applies, and Debtor's payment to Defendant was an avoidable preference.  Some debtors facing bankruptcy are motivated to favor particular creditors to the collective detriment of others.  And some creditors might perceive the debtor's financial decline as a reason to rush to collect to the prejudice of others.  To ensure creditors are treated fairly, Congress designed § 547(b) to allow the trustee to recapture all payments to creditors that satisfy the statutory elements (with a few exceptions), even when a debtor's motivations in making a preferential transfer are not improper, and even if the recipient of the preferential transfer has not overreached or exerted any inappropriate influence over the debtor.  While application of this policy to

MEMORANDUM OF DECISION - 11

particular facts may yield harsh results, it is the law of the land unless and until modified by Congress.

Under the Bankruptcy Code, Defendant must share and share alike with Debtor's other creditors.[9] Judgment will be entered in favor of Plaintiff and against Defendant in the amount of $5,000.

Dated: June 30, 2005

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[9] Fed. R. Bankr. P. 3002(c)(3) allows the recipient of an avoided transfer thirty days from the date of judgment to file a proof of claim in the bankruptcy case so as to participate in distributions from the bankruptcy case.

MEMORANDUM OF DECISION - 12